IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IRMA ROSALES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:15-CV-015-Y-BL |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant | § | Referred to U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Irma Rosales ("Rosales") seeks judicial review of the Commissioner of Social Security's ("Commissioner") decision, which denied her application for a period of disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, respectively. The United States District Judge referred the case to this Court pursuant to 28 U.S.C. § 636(c) and the parties have not consented to proceed before a United States Magistrate Judge.

After considering all the pleadings, briefs, and administrative record, this Court recommends that the Commissioner's decision be reversed and remanded.

### I. BACKGROUND

Rosales claims that she became disabled on November 30, 2011, due to leukemia, arthritis, and anemia. (Tr. 214). Rosales protectively filed an application for DIB and SSI on March 28, 2012. (Tr. 111-124). Rosales's application was initially denied on June 7, 2012, and on reconsideration on August 2, 2012. (Tr. 59, 71). Subsequently, Rosales requested and received a hearing before Administrative Law Judge Herbert Green ("ALJ") on August 27, 2013. (Tr. 14). On November 4, 2013, the ALJ issued an unfavorable decision finding that Rosales was

not disabled and was capable of performing work existing in significant numbers in the national economy. (Tr. 37-52).

The ALJ followed the sequential five-step analysis to arrive at his decision.[1] First, the ALJ determined that Rosales had not engaged in substantial gainful activity since the alleged onset of her disability, November 30, 2011. (Tr. 41). Next, the ALJ determined that Rosales suffered from the following impairments: chronic myelogenous leukemia ("CML"), mild thrombocytopenia, obesity, degenerative changes of the left knee, and a history of anemia. (Tr. 41). Third, the ALJ surmised that none of Rosales's impairments equaled the severity of the impairments in the listings.[2] (Tr. 41). Next, the ALJ determined that Rosales had the residual functional capacity ("RFC") for the full range of sedentary work with no severe non-exertional limitations. (Tr. 49). The ALJ concluded that Rosales could not return to her past relevant work. (Tr. 51). But, the ALJ found that Rosales could perform work that existed in significant numbers in the national economy. (Tr. 52). Finally, the ALJ determined that Rosales was not disabled within the meaning of the Social Security Act. (Tr. 52).

The Appeals Council denied review on November 13, 2014. (Tr. 1). The ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating that the Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

## II.   LEGAL STANDARD

A person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

---

[1] *See* 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).
[2] *See* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526.

2

than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b) (2012). To evaluate a disability claim, the Commissioner employs the following five-step sequential analysis to determine:

> 1) whether the claimant is presently engaging in substantial gainful activity, 2) whether the claimant has a severe impairment, 3) whether the impairment is listed, or equivalent to an impairment listed in appendix I of the regulations, 4) whether the impairment prevents the claimant from doing past relevant work, and 5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Leggett v. Chater*, 67 F.3d 558, 564 n. 2 (5th Cir. 1995); *see also* 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). If

substantial evidence supports the Commissioner's findings, then the findings are conclusive and the court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Id.* (quoting *Newton*, 209 F.3d at 452).

## III.   ANALYSIS

Rosales raises two issues on appeal: (1) whether the ALJ adequately considered the side effects associated with Rosales's medications and (2) whether the ALJ's determination that Rosales could perform the full range of sedentary work was supported by substantial evidence. (Doc. 16, p. 14, 19).

### A. The ALJ properly considered the side effects of Rosales's medications.

Rosales contends that the ALJ failed to consider the side effects associated with her CML medication, Tasigna, when determining that she did not suffer from any non-exertional limitations. (Doc. 16, p. 14).[3] Rosales argues that when side effects significantly interfere with a claimant's ability to perform a normal, eight-hour workday, "the ALJ must determine whether the effect of treatment precludes the claimant from engaging in gainful activity." (Doc. 16, p. 14) (quoting *Francois v. Comm'r of Soc. Sec.*, 158 F. Supp. 2d 748, 770 (E.D. La. 2001)). Rosales alleges that the ALJ did not make the requisite determination in this case. The Commissioner, on the other hand, contends that the objective medical records indicate that Rosales tolerated Tasigna very well and, even if it did cause fatigue, the ALJ accounted for that side effect by

---

[3] Rosales also complains of side effects related to the administration of Gleevec, another CML medication, but, as the Commissioner aptly points out, Rosales stopped taking Gleevec before the relevant time period for this disability evaluation. (Doc. 16, p. 19; Doc. 17, p. 5).

4

lowering Rosales's RFC to a sedentary work level instead of the light work level suggested by the examining physician. (Doc. 17, p. 5).

Under 20 C.F.R. § 404.1529(c)(3), "the Commissioner is required to consider the type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [ ] pain or other symptoms." *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999) (alterations in original) (internal quotation marks omitted). Rosales relies heavily on *Crowley v. Apfel*, in which the court remanded because the ALJ failed to adequately consider side effects of claimant's prescription medications and any non-exertional impairments produced by such side effects. *See id.* In *Crowley*, the ALJ concluded that the claimant's medications did not produce any side effects, but testimony indicated that the medications caused blurred vision, tremors, and diminished coherence. *Id.* at 199. The court determined that this amounted to error by the ALJ and, as such, the ALJ's reliance on the Grids was not appropriate due to the presence of non-exertional impairments. *Id.* at 199-200.[4]

Despite Rosales's insistence regarding the similarities between *Crowley* and her case, her reliance on *Crowley* is misplaced. First, Rosales erroneously posits that "the ALJ here based his conclusion on the mistaken belief that the medical record failed to document any side effects associated with the claimant's medication." (Doc. 16, p. 20). Rosales then lists a rash, prolonged QT intervals, fatigue, and thrombocytopenia as side effects that she attributes to Tasigna. (Doc. 16, p. 20-20). But, each reference to those possible side effects in Rosales's medical records pertains to the time period before Rosales's alleged onset of disability for this application,[5] November 30, 2011. (Tr. 509, 511, 685, 729, 737, 743). Rosales does cite some medical

---

[4] "Use of the 'Grid Rules' is appropriate when it is established that a claimant suffers only from exertional impairments, or that the claimant's nonexertional impairments do not significantly affect his residual functional capacity." *Crowley v. Apfel*, 197 F.3d at 199.
[5] The ALJ noted that the instant application was Rosales's fourth application for disability benefits and that all previous applications had been denied. (Tr. 40).

evidence for the relevant time period, but none of it definitively blames Tasigna or any other medication for the possible side effects.

For instance, Rosales contends that Dr. Neerukonda "was convinced that her extreme fatigue was most likely from the medication that she is taking for the treatment of her CML." (Doc. 16, p. 21). However, in January 2012, Dr. Neerukonda wrote, "The patient has been complaining of extreme fatigue and tiredness. Some part of it could be from her underlying medication that she is taking Tasigna and some part of it could be from her underlying hypothyroidism [as] explained to her." (Tr. 683). In April 2012, Dr. Neerukonda added, "The patient continues to do well on [Tasigna] with molecular changes of CML." (Tr. 679). Also, Dr. Neerukonda opined that Rosales had no dizziness, no chest pain or palpitations, and that "overall she is handling herself well." (Tr. 679). Additionally, Rosales claims that Dr. Neerukonda "echoed his opinion" regarding the Tasigna side effects in June 2012 by noting Rosales's extreme fatigue due to the medication. (Doc. 16, p. 21). But, nowhere in Dr. Neerukonda's records from June 2012 does he indicate that Rosales's fatigue is attributed to Tasigna. (Tr 676-678). Rather, he echoes his sentiment that Rosales continues to do well on Tasigna. (Tr. 676, 677). With regard to Dr. Neerukonda's records, the ALJ noted that Rosales "reported no fever, nausea, or vomiting, and the 'additional' work-up revealed no underlying cause for shortness of breath and fatigue." (Tr. 42). The ALJ concluded, "Although the claimant alleged such symptoms as a side effect of medication, the record reveals no change in the Tasigna regimen – well-tolerated since its initiation several years earlier." (Tr. 42).

Next, Rosales contends that her physicians "began attributing other symptoms, such as shortness of breath and headaches, to Tasigna" in February 2013 and August 2013. (Doc. 16, p. 21). In summary, these records indicate that Rosales was found not to have chest pain or

palpitations, but did report that she felt short of breath when walking long distances. (Tr. 871, 946). Also, Rosales was determined to be positive for headaches and reported feeling dizzy when climbing stairs. (Tr. 871, 946). Without being specific as to which symptoms, Dr. Neerukonda noted that "[s]ome of the symptoms could be from Tasigna she is taking." (Tr. 873, 947). Even still, Dr. Neerukonda opined that Rosales continued "to do well on this medication." (Tr. 871, 946).

> The ALJ summed up his decision regarding Rosales's side effects by writing:
>
>> Although testimony alleges debilitating side effects of Tasigna, including but not limited to extreme fatigue and malaise, the medical record provides no objective evidence substantiating such level of complaint, and consistently documents, instead, good tolerance to that specific therapy since its initiation in 2009. Mild nausea, noted at times, is amenable to medication, should symptoms warrant.

(Tr. 48). Seemingly, the ALJ, contrary to Rosales's contention, went to great lengths to assess the reported side effects of Tasigna, but he ultimately concluded that the effects of her treatment, if any, did not preclude her from working. *See Newton*, 209 F.3d at 459 ("[I]f an individual's medical treatment significantly interrupts the ability to perform a normal, eight-hour work day, then the ALJ must determine whether the effect of treatment precludes the claimant from engaging in gainful activity.").

As a sub-issue, Rosales avers that the ALJ's use of the Grids to find her not disabled was error since the Grids only apply to exertional impairments and non-exertional impairments that do not significantly affect the RFC. (Doc. 16, p. 21) (citing *Crowley*, 197 F.3d at 199). Rosales argues that her side effects from Tasigna qualify as non-exertional impairments that significantly affect her RFC determination. (Doc. 16, p. 17). Specifically, Rosales claims that the Fifth Circuit and others have held fatigue, "respiratory impairments,' and palpitations to be non-exertional impairments to which the Grids are inapplicable. (Doc. 16, p. 17). First, Rosales indicates that

7

"respiratory impairments" is the only condition from this list recognized by the Fifth Circuit as a non-exertional impairment. *See Thomas v. Schweiker*, 666 F.2d 999, 1003 (5th Cir. 1982).[6] Rosales's case differs from *Thomas*. In *Thomas*, the claimant could perform sedentary work, but she had a respiratory condition that precluded her from working around dust, excessive heat, and toxic fumes. *Id.* Rosales, on the other hand, simply claims shortness of breath "when walking for long distances." (Tr. 873, 946). In *Thomas*, the ALJ failed to take the claimant's respiratory condition into account when formulating the RFC, but in this case, the ALJ accounted for Rosales's shortness of breath by reducing her work level to sedentary, meaning that she would not be required to walk long distances.[7]

As for palpitations, all of Rosales's medical records for the relevant time period demonstrate that she was negative for palpitations and chest pain. (Tr. 873, 946). Finally, Rosales cites *Rose v. Shalala*, a First Circuit case, for the proposition that the existence of fatigue renders the Grids inapplicable. *See Rose*, 34 F.3d 13, 19 (1st Cir. 1994). However, the claimant in *Rose* was diagnosed with Chronic Fatigue Syndrome ("CFS"), but the ALJ failed to acknowledge the diagnosis along with any underlying effects. *Id.* Subsequently, the court found that CFS did "significantly impair claimant's ability to perform even sedentary work" and, as a result, "the ALJ erred in relying on the Grid to reach a finding of 'not disabled.'" *Id.* Here, Rosales was never diagnosed with any fatigue related impairment, but she did note fatigue as a side effect to her medication. As required, the ALJ considered Rosales's fatigue-related claims and, as discussed, determined that the "medical record provides no objective evidence

---

[6] Rosales cites First Circuit and Tenth Circuit cases for the other two impairments. (Doc. 16, p. 17).
[7] The ALJ limited Rosales to sedentary work due to obesity and degenerative changes of the left knee. (Tr. 50). "The regulations define sedentary work as involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties. *Jobs are sedentary if walking and standing are required occasionally* and other sedentary criteria are met. By its very nature, work performed primarily in a seated position entails no significant stooping. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions." SSR 83-10, at *5 (1983) (emphasis added).

substantiating" Rosales's allegations of extreme fatigue and malaise. (Tr. 48). In other words, the ALJ did not find a non-exertional impairment related to the side effects of Tasigna that significantly affected Rosales's RFC. *See Crowley*, 197 F.3d at 199. Therefore, the ALJ did not err in utilizing the Grids—based solely on this issue—to determine Rosales's ability to perform work in the national economy. *See id.*

### B. The ALJ erred in not considering Rosales's postural and environmental limitations.

Next, Rosales argues that the ALJ committed a *Ripley* error because his finding that she could perform the full range of sedentary work is not supported by any physician on record. (Doc. 16, p. 23).

> In *Ripley*, the ALJ ruled that the claimant could perform sedentary work even though there was no medical evidence or testimony supporting that conclusion. The Court of Appeals noted that the claimant's record contained a vast amount of evidence establishing that he had a back problem but did not clearly establish the effect that condition had on his ability to work. The Fifth Circuit therefore remanded with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work. The Court of Appeals rejected the Commissioner's argument that the medical evidence substantially supported the ALJ's conclusion because the court was unable to determine the effects of the claimant's conditions, "no matter how 'small,'" on his ability to work, absent a report from a qualified medical expert.

*Gray v. Colvin*, No. 3:14-CV-3308-P-BN, 2015 WL 5459577, at *4 (N.D. Tex. July 15, 2015), *adopted in*, 2015 WL 5472857 (N.D. Tex. Sept. 17, 2015) (internal citations omitted). Here, the ALJ decided that Rosales was capable of performing the full range of sedentary work activity, without non-exertional limitations. (Tr. 49). Rosales contends that her case is similar to *Ripley* since the ALJ found that she could perform sedentary work even though no physician ever endorsed such a finding. More specifically, Rosales contends that each physician that performed

a Physical RFC Assessment ("PRFC") found non-exertional limitations.[8] (Doc. 16, p. 24). As such, Rosales claims that the ALJ's RFC is unsupported because it was born out of his own opinion and not that of a medical expert. *See Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); *see also Williams v. Astrue*, 355 F. App'x 828, 832 (5th Cir. 2009) ("an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"). Rosales explains that Dr. Amita Hedge identified postural and environmental limitations in her PRFC related to Rosales's dizziness. (Doc. 16, p. 24). Specifically, Dr. Hedge opined that Rosales should never climb ladders, ropes, or scaffolds due to complaints of dizziness and that Rosales should avoid moderate exposure to hazards such as heights, open water, open flames, and hazardous machinery for the same reason. (Tr. 666, 668).

Like *Ripley*, the Commissioner contends that substantial evidence supports the ALJ's decision because Dr. Hedge's PRFC endorsed light work activity for Rosales. The Commissioner avers that if Rosales can perform light work, the full range of sedentary work is subsumed. (Doc. 17, p. 8). However, the Commissioner fails to address Rosales's arguments regarding the postural and environmental limitations endorsed by Dr. Hedge.

Unlike *Ripley*, there is at least one relevant medical source statement in this case which essentially finds Rosales capable of performing light work activity. (Tr. 664). In the absence of non-exertional limitations, this PRFC could be relied upon to support the ALJ's finding that Rosales could also perform sedentary work. 20 C.F.R. § 404.1567 ("If someone can do light work, . . . he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."). But, since the ALJ did not include or address the additional, non-exertional limitations identified Dr. Hedge, the Court

---

[8] Rosales claims unaddressed mental limitations as well, but the authority she relies on pertains to the time period prior to her alleged onset of disability. In fact, the records that she cites are identified as belonging to one of Rosales's prior files. (Doc. 16, p. 24).

"cannot agree that the evidence substantially supports the conclusion that [Rosales] was not disabled because [the Court is] unable to determine the effects of [Rosales's] conditions, no matter how 'small', on [her] ability to perform sedentary work." *See Ripley*, 67 F.3d at 558. In other words, the Court cannot discern, in the absence of a medical opinion on the issue, whether Rosales could perform sedentary work activity in the face of her postural and environmental limitations.

"The absence of the requisite findings by the ALJ compels a remand for resolution of the question, raised by objective medical evidence, whether [Rosales's] capacity for [sedentary] work is diminished by environmental [and postural] limitations." *See Dellolio v. Heckler*, 705 F.2d 123, 128 (5th Cir. 1983). Rosales argues that she was prejudiced by this error because, given the additional limitations, the ALJ should not have utilized the Grids to determine whether she was disabled. (Doc. 16, p. 24). The Court agrees. *See Crowley*, 197 F.3d at 199. In fact, if it is "determined that such limitations reduce the number of jobs which [Rosales] might be able to perform, and that this effect cannot be measured under the Medical-Vocational Guidelines, plenary consideration must be accorded all relevant facts." *See Dellolio*, 705 F.2d at 128.

## IV. CONCLUSION

The ALJ's decision in this case is not supported by substantial evidence. For the foregoing reasons, the undersigned **RECOMMENDS** that the district court **REVERSE** the Commissioner's decision and **REMAND** Rosales's case for further administrative proceedings.

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must

file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

Dated February 11, 2016.

E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE